**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **CHARLES W. CALES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:04-0238** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's Applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on cross-Motions for Judgment on the Pleadings. (Document Nos. 9 and 11.) Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Charles W. Cales (hereinafter referred to as "Claimant"), filed Applications for SSI and DIB on February 28, 2002, alleging disability as of January 27, 2002, due to "severe bilateral clubfoot." (Tr. at 16, 47 - 49, 87.) The claims were denied initially and upon reconsideration. (Tr. at 36 - 37, 41 - 42.) On October 31, 2002, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 43.) The hearing was held on September 30, 2003, before the Honorable Arthur L. Conover. (Tr. at 242 - 278.) By Decision dated October 24, 2003, ALJ Conover determined that Claimant was not entitled to benefits. (Tr. at 16 - 26.) Claimant requested that the Appeals Council review the ALJ's decision (Tr. at 11.) The ALJ's Decision

became the final decision of the Commissioner on February 23, 2004, when the Appeals Council denied Claimant's request for review.  (Tr. at 7 - 9.) On March 16, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2002).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether

the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a).[1] First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in

_____

[1] These Regulations were substantially revised effective September 20, 2000. *See* 65 Federal Register 50746, 50774 (August 21, 2000).

3

which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

4

rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, January 27, 2002. (Tr. at 25, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the following "severe combination of medically determinable impairments: residuals of bilateral talipes equinovarus (clubfoot), residuals of traumatic fracture of the left ankle, and arthritis of the feet and ankles, aggravated by obesity." (Tr. at 25, Second Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 25, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity as follows:

> The claimant has the residual functional capacity to perform the physical demands

of work except that he is limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently; uses a cane to ambulate; cannot stand more than an hour or two per day but can sit for the rest of an ordinary workday; should not be involved in work that requires pushing/pulling with the lower extremities; cannot balance, kneel, crawl or climb ladders, ropes or scaffolds; can only occasionally stoop, crouch, or climb stairs or ramps; cannot tolerate exposure to hazardous situations, such as heights or dangerous machinery; and should not be involved in driving motorized equipment as part of his work activity. The claimant has the mental residual functional capacity for work except that, due to pain and the side effects of medications, the claimant is restricted to simple routine instructions which do not involve extended attention and concentration.

(Tr. at 25, Finding No. 6.)  As a result, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 26, Finding No. 7.) Nevertheless, the ALJ concluded that "[a]lthough the claimant's nonexertional limitations do not allow him to perform the full range of light work, given his age, education, work experience, and residual functional capacity, the claimant remains capable of making an adjustment to jobs which exist in a significant number in the national economy." (Tr. at 26, Finding No. 12.)  On this basis, benefits were denied.  (Tr. at 26.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as:

evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.  Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the

record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on February 17, 1960, and was 43 years old at the time of the administrative hearing, September 30, 2003. (Tr. at 47, 245, 248.) Claimant completed the tenth grade, obtained a GED, went to a school of nursing and was licenced as a LPN. (Tr. at 93, 245, 249 - 250.) He worked as a heavy equipment operator through 1997 and then returned to school and started as a LPN in 1999 and worked as a LPN through February, 27, 2002. (Tr. at , 23, 88, 250 - 252.)

<u>The Medical Record</u>

The Court has reviewed the medical evidence of record and will discuss it in relation to Claimant's arguments.

<u>Claimant's Challenges to the Commissioner's Decision and the Commissioner's Response</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ erred in rejecting the opinions of treating physician, Dr. Stanley Day, and consulting physician, Dr. Rodolfo Gobunsuy; (2) the ALJ erred in failing to find Claimant's description of his pain and limitations credible; (3) the ALJ erred in finding Claimant's mental impairment non-severe; (4) the ALJ erred in rejecting the opinion of Dr. Day that Claimant is totally disabled; and (5) the Appeals Council erred in failing to make specific findings concerning medical records which Claimant submitted in support of his request for review of the ALJ's decision.

(Document No. 10, pp. 14 - 21.)

The Commissioner asserts that (1) the ALJ properly found that Claimant's mental impairment was not severe; (2) the ALJ properly weighed the opinions of Dr. Day and Dr. Gobunsuy; (3) the ALJ properly assessed Claimant's credibility; (4) the ALJ properly relied upon the vocational expert's testimony; and (5) the Appeals Council properly denied Claimant's request for review of the ALJ's decision. (Document No. 12, pp. 9 - 19.)

<u>Analysis</u>

1. <u>Treating/Consulting Physicians' Opinions and Dr. Day's Opinion of Total Disability.</u>

Claimant contends that the ALJ "was clearly wrong in rejecting the opinion of the treating physician, Dr. Stanley T. Day, and the opinion of the consulting physician, Dr. Rodolfo Gobunsuy." (Document No. 10, p.19.) Claimant refers to Dr. Day's October 22, 2002, report in which Dr. Day states that "[t]his man has been our patient over 13 years. He worked until last year when he was totally disabled by deterioration of foot function from congenital clubfoot." (Tr. at 169.) Additionally, Claimant refers to Dr. Day's January 27, 2003, letter to Claimant's attorney (Tr. at 168.) in which Dr. Day states as follows:

> I continue to be primary care physician for Charles W. Cales. His disability is due to progressive bilateral ankle damage. He has clubfeet, corrected with many surgeries as a child and over the last few years his ankle problems have reoccurred.
>
> He is totally disabled from any occupation that requires him to be on his feet for over one hour a day. He develops severe ankle pain when on his feet, for [sic] especially if he is on his feet for sustained times of two or more hours (which he does rarely, as he can never sustain more that [sic] one day a week with two or more hours of weight bearing).

Claimant further refers to the May 22, 2002, Disability Determination Evaluation of Dr. Rodolfo Gubunsuy (Tr. at 148 - 151.). Upon examining Claimant, Dr. Gubunsuy stated his impression as

8

follows (Tr. at 151.):

> Charles may have degenerative arthritis of his feet. He has atrophy of small muscles in his legs with full well-developed muscles in his thighs and this may be because of his pain in the feet, but it is more suggestive of Charcot-Marie-Tooth syndrome. There is no atrophy of the hand muscles. Anyhow, because of the atrophy, he is clumsy as he stated. * * * He cannot stand steadily with one leg at a time, but he walks steadily even without ambulatory aid.

Finally, Claimant refers to the July 30, 2002, Outpatient Progress Note of Dr. Russell Biundo (Tr. at 163 - 164.) in which Dr. Biundo stated that Claimant was "status post bilateral clubfoot of equinovarus deformity status post soft tissue release and Achilles tendon lengthening status post left tibia fracture status post open reduction internal fixation. He still has pain across his ankles and feet, particularly the tibiotalar joint and not the tibia itself at this point." (Tr. at 164.) The Commissioner contends that the ALJ's decision is consistent with Dr. Day's and Dr. Gubunsuy's assessments of Claimant's physical limitations and the ALJ properly rejected Dr. Day's opinion on the ultimate issue whether Claimant was totally disabled. (Document No. 12, pp. 12 - 14.)

The Regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d). That Regulation provides further that "[u]nless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion." In evaluating the opinions of treating physicians, the ALJ generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2)(2000). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55(W.D.Va. 1996);

9

see also, 20 C.F.R. 404.1527(d)(2)(2000). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. § 404.1527(d)(2)(2000). Ultimately, it is the responsibility of the ALJ, not the Court, to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the ALJ's conclusions are rational. Oppenheimer v. Finch, 495 F.2d 396,397 (4th Cir. 1994).

If the ALJ determines that a  treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).  These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  Id. § 416.927(d)(2).

Generally speaking with respect to medical opinions, the ALJ gives more weight to opinions of treating physicians than to those of examining or consulting physicians and non-examining physicians. 20 C.F.R. § 1527. As between the opinions of examining or consulting physicians and non-examining physicians, the ALJ will generally give more weight to the opinion of examining or consulting physicians. 20 C.F.R. § 404.1527(d)(1). Opinions of medical experts are accorded the same treatment as that given non-examining sources. 20 C.F.R. § 1527(f)(2)(iii).

20 C.F.R. § 404.1527(e)(1) through (2) provides that certain medical source opinions are not

10

regarded as medical opinions but are considered opinions on issues reserved to the Commissioner and will not be given special significance as follows:

> (e) *Medical source opinions on issues reserved to the Commissioner.* Opinions on some issues . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability.
>
> (1) *Opinions that you are disabled.* We are responsible for making the determination or decision about whether you meet the statutory of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that you are disabled.
>
> (2) *Other opinions on issues reserved to the Commissioner.* We use medical sources, including your treating sources, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meet or equal the requirements of any impairment(s) in the Listing of Impairments . . . , your residual functional capacity . . ., or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.
>
> (3) We will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . ..

The record contains Dr. Day's[3] medical records indicating his treatment of Claimant between February 23, 1998, and January 27, 2003. (Tr. at 168 - 193.) The record further contains Dr. Day's progress note dated January 24, 2003, (Tr. at 208.) and a copy of his December 10, 2003, deposition (Tr. at 219 - 232.) which Claimant submitted as his claim was pending before the Appeals Council. Dr. Day diagnosed Claimant as having "progressive bilateral ankle damage" as a consequence of having clubfeet and surgeries to correct them since he was a child. (Tr. at 168.) It appears that in 2002, Dr. Day referred Claimant to University Health Associates and orthopedist Dr. Russell Biundo saw Claimant in July, 2002. (Tr. at 163 - 164.) Dr. Biundo's impression was that Claimant was "status post bilateral clubfoot of equinovarus deformity status post soft tissue release and Achilles

---

[3] Dr. Day is board certified in family practice. (Tr. at 221.)

tendon lengthening status post left tibia fracture status post open reduction internal fixation. He still has pain across his ankles and feet, particularly the tibiotalar joint and not the tibia itself at this point." (Tr. at 164.) Dr. Biundo recommended that Claimant "continue with orthotics. Further evaluation for surgical intervention is a possibility. Consider for a possibility of fusion of the subtalar joint and tibiotalar joint, however, this may limit his range of motion. The patient is well aware of this, but we recommend another opinion for possible interventions." (Id.) Dr. Scott Silverstein, an orthopedist with University Health Associates, examined Claimant in August, 2002, and recommended orthotics or an injection in addition to pain medication. (Tr. at 165 - 166.) Dr. Silverstein saw Claimant in October, 2002, and February, 2003, in consideration of Claimant's orthotics and consideration of surgical intervention. (Tr. at 200 - 201.) It appears that Dr. Silverstein saw Claimant again in June, 2003, prior to the administrative hearing on September 30, 2003, and "took his hardware out and tried to debride his ankle." (Tr. at 209, 202- 203, 216 - 218.) Dr. Silverstein saw Claimant again on October 6, 2003, and concluded that "[h]e is maybe slightly better than he was before surgery but is certainly not wonderful. He continues to have pain." (Tr. at 210.) Dr. Silverstein stated that "I think he can continue to treat it conservatively using his brace and medications . . .. In the long run, the only other thing he could do would be an ankle fusion." (Id.)

Dr. Rodolfo Gobunsuy, a DDS physician, examined Claimant on May 22, 2002. (Tr. at 148 - 154.) Dr. Gobunsuy found that Claimant "has difficulty walking on his heels, doing heel-to-toe tandem and squatting. He cannot walk on his toes. He is unsteady standing with one leg at a time." (Tr. at 151.) He noted "atrophy of the gastrocnemius and anterior leg muscles." (Id.) He found that Claimant "may have degenerative arthritis of his feet. He has atrophy of small muscles in his legs with full well-developed muscles in his thighs and this may be because of his pain in the feet, but

12

is more suggestive of Chacot-Marie-Tooth syndrome. . . . Anyhow, because of the atrophy, he is clumbsy as he stated. . . . He cannot stand steadily with one leg at a time, but he walks steadily even without ambulatory aid." (Id.)[4]

The ALJ summarized the treatment provided by Dr. Day and Dr. Silverstein and the evaluation of Dr. Gobunsuy and accepted their findings at level two of the sequential analysis. (Tr. at 18.) Accordingly, the ALJ concluded that "[t]he medical and other evidence shows that the combination of conditions affecting the claimant's feet and ankles, aggravated by borderline extreme obesity, constitute a severe impairment." (Tr. at 17 (Reference to Exhibit and Regulations omitted.)) The ALJ further considered the opinions of these doctors in determining Claimant's residual functional capacity at level four of the sequential analysis. (Tr. at 20.)[5] The ALJ did not discredit the opinions of these doctors at either level of his analysis. He found Dr. Day's observation that Claimant could not stand for more than an hour a day due to severe ankle pain inconsistent with Claimant's report of what he could do as he was employed as a LPN. (Tr. at 22.) The Court notes that Dr. Silverstein indicates in his October 14, 2002, Outpatient Progress Note that "the AFO [ankle foot orthosis] is letting [Claimant] walk an additional hour a day." (Tr. at 201.) It further appears from Dr. Silverstein's October 6, 2003, notes that Claimant had some very slight relief from his surgery. (Tr. at 210.) In considering Dr. Day's opinion that Claimant is totally disabled, the ALJ

---

[4] Charcot-Marie-Tooth syndrome is characterized by a slowly progressive degeneration of the muscles in the feet, lower legs, hands and forearms and a mild loss of sensation in the limbs, fingers and toes.

[5] The record contains a June 18, 2002, Residual Functional Capacity Assessment - Physical (Tr. at 155 - 162.), but the Assessment contains no indication of Claimant's exertional and non-exertional limitations. The ALJ determined Claimant's RFC on the basis of Claimant's subjective allegations as they were supported by the clinical findings of his treating and examining physicians.

13

correctly cited the standard for considering the opinions of medical sources on issues reserved to the Commissioner, considered the medical evidence in view of it and rejected it. The Court finds the ALJ's analysis and reasoning supported by the evidence. The Court therefore finds the ALJ's conclusions in these regards supported by substantial evidence. The Court further finds the ALJ's consideration of the opinions of Dr. Day, Dr. Silverstein and Dr. Gobunsuy consistent with applicable law and Regulations.

2. Pain/Credibility Assessment.

Claimant asserts that "[t]he Administrative Law Judge was clearly wrong in failing to find the plaintiff's description of his pain and limitations credible. The plaintiff had a good work record prior to ceasing work on January 27, 2002 due to the progression of his congenital condition of both feet and the left ankle fracture. Considering the medical evidence and the nature of the plaintiff's condition it is not unreasonable for the plaintiff to require the elevation of his lower extremities in either a reclining or lying position for irregular times during the day. Based upon this assumption the vocational expert testified that he could not identify jobs which exist in significant numbers which would allow these accommodations (TR 275)." (Document No. 10, p. 19.) The Commissioner responds that objective evidence does not support Claimant's assertion that he is required to elevate his lower extremities. (Document No. 12, p. 14 - 15.)

A two-step process is used to determine whether a claimant is disabled by symptoms/pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the symptoms/pain alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (1999); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the symptoms/pain and the extent

14

to which it affects a claimant's ability to work must be evaluated.  Id. at 595.  When a claimant

proves the existence of a medical condition that could cause symptoms/pain, "the claimant's

subjective complaints [of pain] must be considered by the Secretary, and these complaints may not

be rejected merely because the severity of pain cannot be proved by objective medical evidence."

Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994).  Objective medical evidence of symptoms/pain

should be gathered and considered, but the absence of such evidence is not determinative.  Hyatt v.

Sullivan, 899 F.2d 329, 337 (4th Cir. 1990).  A claimant's symptoms, including pain, are considered

to diminish his capacity to work to the extent that alleged functional limitations are reasonably

consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and

416.929(c)(4) (1999).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your
> prior work record, your statements about your symptoms, evidence submitted by
> your treating, examining, or consulting physician or psychologist, and observations
> by our employees and other persons.  . . .  Factors relevant to your symptoms, such
> as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other
> symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you
> take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief
> of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other
> symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every
> hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain

or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (1999.

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms,
the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to

engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must

consider the impact of the symptoms on a claimant's ability to function along with the objective

medical and other evidence in determining whether the claimant's impairment is "severe" within the

meaning of the Regulations. A "severe" impairment is one which significantly limits the physical

or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence

of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a

claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig,

16

76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain.  Id. at 595.  Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision.  The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ provided a detailed analytical summary of the evidence in considering Claimant's allegations of symptoms/pain. (Tr. at 20 - 23.) He concluded that Claimant's allegation that he had two or three good days and two very bad days every week was inconsistent with his report of his daily activities. (Tr. at 21.) He nevertheless concluded that "[t]he medical and other evidence supports a significant level of chronic pain. In arriving at the claimant's mental residual functional capacity, the undersigned considered the cognitive impact of chronic pain and the side effects of narcotic and psychotropic medications. The undersigned finds the claimant's self-reports of difficulty maintaining concentration and thinking to be partially credible and concludes that a restriction to simple routine tasks is warranted." (Tr. at 22 - 23.) The Court finds that the ALJ's recital of evidence respecting Claimant's symptoms/pain is accurate and his conclusions supported by substantial evidence. Claimant indicated in applying for benefits in February, 2002, that he and his wife prepared meals and he did laundry, vacuuming, household repairs, lawn care, child care and took out the trash at home. (Tr. at 73.) Claimant walked with a cane as he came to attend the

administrative hearing. Claimant testified that his condition has become "continuously worse over the years." (Tr. at 260.) Claimant stated that he had two bad days a week when he sits as much as he can. (Tr. at 263.) Dr. Day indicated in his January 27, 2003, letter to Claimant's attorney that Claimant "is disabled from any occupation that requires him to be on his feet for over one hour a day." (Tr. at 168.) Claimant testified further that his pain and medications affected his ability to think, remember and concentrate. (Tr. at 264, 266.) It is clear that the ALJ accepted Claimant's testimony in part in presenting his hypothetical question to the vocational expert. He asked the expert to assume a person who was required to walk with a cane, could stand no more than an hour or two per day and whose pain and medications limited him to simple, routine tasks without extended attention and concentration. (Tr. at 273 - 274.) It is not evident in the record that Claimant must remain sedentary and elevate his legs to have relief from his chronic pain. Accordingly, the Court finds Claimant's assertion that the ALJ erred in considering his allegations of pain and credibility without merit. The ALJ's analysis in these respects is clearly consistent with applicable law and Regulations and supported by substantial evidence.

3. The Severity of Claimant's Mental Impairment.

Claimant asserts that "[t]he Administrative Law Judge was clearly wrong in failing to properly consider the plaintiff's psychiatric condition. On July 8, 2002 the treating physician at Family Care Clinic diagnosed depression (TR 170). The Administrative Law Judge was clearly wrong in finding the plaintiff's mental impairment to be non-severe. This finding is inconsistent with the report of Dr. Thomas Penders dated January 7, 2004 (TR 234). Dr. Penders diagnosed dysthymia and reported a Global Assessment of Functioning of 60 (TR 234). Dr. Penders has prescribed Trazadone in addition to Prozac which was previously prescribed by Dr. Stanley T. Day. The

18

Administrative Law Judge did not have Dr. Penders report." (Document No. 10, p. 20.) The Commissioner responds that Claimant did not seek the treatment of a specialist for his depression until he went to Dr. Penders, a psychiatrist, after the ALJ issued his decision and even then Dr. Penders report does not evidence that Claimant's depression was severe. The Commissioner further contends that in any event the ALJ considered symptoms attributable to Claimant's mental condition in determining Claimant's RFC by finding that Claimant could only follow simple, routine instructions which did not involve extended attention or concentration. (Document No. 12, pp. 11 - 12.)

At the finding of depression and recommendation of a physician's assistant, Dr. Day prescribed Prosac. (Tr. at 170.) As the ALJ found, Dr. Day did not refer Claimant to a psychiatrist or psychologist for treatment, and Dr. Silverstein did not note anything abnormal in Claimant's mental functioning. (Tr. at 19.) As the ALJ noted further, Claimant did not testify at the administrative hearing that his depression contributed to his disability. The ALJ then went through a rating analysis summarizing the evidence. (Id.) He concluded that Claimant had no more than mild difficulty in social functioning and carried on a wide variety of daily activities. He found that Claimant's depression did not qualify as a severe impairment but considered it "for its minimal contribution to claimant's combination of impairments." (Id.) The ALJ stated in determining Claimant's RFC that "[t]he claimant has the mental residual functional capacity of work except that, due to pain and the side effects of medications, he is restricted to simple routine instructions which do not involve extended attention and concentration." (Tr. at 20.) Claimant went to Dr. Penders in January, 2004. (Tr. at 233 - 234.) Dr. Penders confirmed Dr. Day's diagnosis of depression and stated his Global Assessment of Functioning as 60 indicating that Claimant was bordering between

19

mild and moderate symptoms.[6] Dr. Penders prescribed Trazadone in addition to Prozac. The Court finds that the ALJ properly considered the evidence of record before him pertaining to Claimant's mental condition. The Court further finds that Dr. Penders' diagnosis, being the opinion of a psychiatrist, validates Dr. Day's opinion as Claimant's treating family physician and varies only slightly from the ALJ's rating of Claimant's functioning insofar as Dr. Penders found Claimant's symptoms moderate when the ALJ found them to be mild. Accordingly, considering the record as a whole, the Court finds the ALJ's consideration of Claimant's mental condition in conformity with applicable law and Regulations and supported by substantial evidence.

4. The Appeals Council's Consideration of Claimant's Further Evidence.

Claimant asserts that "[t]he Appeals Council made no specific findings concerning the

---

[6] The DSM-IV Multiaxial Assessment Diagnosis consists of the following:

Axis I: Clinical Disorders
Axis II: Personality Disorders and Mental Retardation
Axis III: General Medical Conditions
Axis IV: Psychosocial and Environmental Problems
Axis V: Global Assessment of Functioning (GAF)

The Global Assessment of Functioning Scale is a system used by clinicians to indicate their overall judgment of psychological, social and occupational functioning. It is therefore a system for measuring the overall severity of psychiatric disturbances. The GAF Scale runs from 100 (no symptoms and superior functioning in a wide range of activities) to 0 (persistent danger of severely hurting self or others and inability to maintain minimal personal hygiene). A GAF score between 51 and 60 indicates the following symptom severity and level of functioning: Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or some difficulty in social, occupational or school functioning (e.g., few friends, conflicts with co-workers). A GAF score between 61 and 70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational or school functioning (e.g., occasional truancy or theft within the household), but generally functioning pretty well and having some meaningful interpersonal relationships.

medical evidence submitted in support of the Request for review." Claimant states that this matter should be remanded for reconsideration of the entire record and a consultative psychological evaluation in view of Dr. Day's December, 2003, deposition and Dr. Penders' January 7, 2004, findings. (Document No. 10, pp. 20 -21.) The Commissioner responds that the Appeals Council denied Claimant's request for review of the ALJ's decision; therefore, the Appeals Council's decision is not subject to review and the ALJ's decision became the final decision of the Commissioner. The Commissioner further contends that the evidence which Claimant submitted while his case was pending before the Appeals Council was not new or material evidence and therefore remand is not in order. (Document No. 12, pp. 17 - 18.)

Claimant submitted additional documents and medical records as his request for review was pending before the Appeals Council. (Tr. at 208 - 241.) They include Claimant's attorney's January 26, 2004, letter to the Appeals Council summarizing the evidence including the evidence submitted to the Appeals Council after the administrative hearing and requesting that the Appeals Council remand the case for consideration of the new evidence. (Tr. at 236 - 241.) and a copy of a January 24, 2003, progress note of Dr. Day (Tr. at 208.); outpatient progress notes of Dr. Scott Silverstein dated from June 9, 2003, to August 25, 2003 (Tr. at 209 - 218.); the December 10, 2003, telephone deposition of Dr. Day (Tr. at 219 -232.); the January 7, 2004, medical report of Dr. Thomas Penders (Tr. at 233 - 234.); and a January 18, 2003, list of Claimant's medications(Tr. at 235.).

The record shows that this evidence was submitted to the Appeals Council and was made a part of the record that is currently before the Court. (Tr. at 7 - 9, 208 - 241.) The attached Order of the Appeals Council identifies the evidence as "hereby made a part of the record." (Tr. at 10.) The Appeals Council's February 23, 2004, decision concluded that there was no basis for granting

Claimant's request for review of the ALJ decision. (Tr. at 7.) In the Appeals Council decision, the

Appeals Officer stated as follows (Tr. at 7 - 8.):

> In looking at your case, we considered the reasons you disagree with the decision
> and the additional evidence listed on the enclosed Order of Appeals Council. We
> found that this information does not provide a basis for changing the Administrative
> Law Judge's decision.

Considering evidence which Claimant submitted to the Appeals Council and the Appeals

Council included in the record, the Fourth Circuit concluded in Wilkins v. Secretary, Dept. of Health

and Human Serv., 953 F.2d 93, 96 (4th Cir. 1991)(*en banc*), that Courts reviewing decisions of the

Social Security Administration must consider "the record as a whole, including the new evidence,

in order to determine whether substantial evidence supports the Secretary's findings." Thus,

reviewing Courts must consider new evidence which the claimant submits while the decision of the

Appeals Council is pending even when the Appeals Council denies the claimant's request for

review. *See also* Adkins v. Barnhart, 2003 WL 21105103, * 5 (S.D.W.Va.)(Stanley, M.J.)

In deciding whether to grant review, the Appeals Council "must consider evidence submitted

with the request for review . . . 'if the additional evidence is (a) new, (b) material, and (c) relates to

the period on or before the date of the ALJ's decision.'" Wilkins, 953 F.2d at 95-96 (citations

omitted). Evidence is "new" if it is not duplicative or cumulative. See id. at 96. "Evidence is material

if there is a reasonable possibility that the new evidence would have changed the outcome." Id.

Additionally, when the Appeals Council considers evidence, it must provide the reviewing Court

with the basis for its decision to reject such evidence. See Toney v. Barnhart, Civil Action No. 5:02-

0489, Order, Doc. No. 19 (S.D.W.Va. September 26, 2003) and Order, Doc. No. 26 (December 19,

2003)(Judge Chambers); Thomas v. Comm'r of Social Security, 24 Fed.Appx. 158, 161, 2001 WL

1602103, * 2 - 4 (4th Cir. 2001) (unpublished) (per curiam); Jordan v. Califano, 582 F.2d 1333,

22

1335 (4th Cir. 1978) ("A bald conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court, except in the very rare instance when a case is so one-sided as to be obvious."); Hawker v. Barnhart, 235 F.Supp.2d 445, 450 (D. Md. 2002). "Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the Secretary's decision is supported by substantial evidence." Wilkins, 953 F.2d at 96.

The Regulations governing the circumstances under which the Appeals Council is to review an ALJ decision indicate that additional evidence will not be considered *unless* the evidence is new and material and relates to the period on or before the date of the ALJ decision. See 20 C.F.R. § 404.970(b) (2002), Hawker v. Barnhart, 235 F.Supp.2d at 445 - 46. For the Court to engage "in an examination of each of the records and then to determine whether they are credible and entitled to any weight would be to engage in the very task that this Court cannot do:  fact-finding." Hawker, 235 F.Supp.2d at 448 (citing DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983)("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator."). "Requiring the Appeals Council to explain its handling of evidence is neither a novel concept nor a burdensome obligation." Hawker, 235 F.Supp.2d 445, 450 (D. Md. 2002). In a recent unpublished *per curiam* decision, the Fourth Circuit reached the same conclusion on this issue. In Thomas v. Comm'r of Social Security, 24 Fed.Appx. 158, 2001 WL 1602103 (4th Cir. 2001), the Appeals Council, using nearly the same language as appears in the instant Appeals Council decision, denied the claimant's request for review after considering newly submitted evidence. Thomas, 24 Fed.Appx. at 160-61. Calling the Appeals Council's explanation "ambiguous," the Court remanded the case for further development of the record. Id. at 162 - 63.

The Court finds that the Appeals Council did not state specifically why it found that the

evidence which Claimant submitted while his case was pending there did not provide a basis for changing the ALJ's decision, but it is clear that the evidence did not provide such a basis. While the law appears to require the Appeals Council to provide more of an explanation than it did in this case, the Court considers the Appeals Council's failure in this case to provide such an explanation harmless error. The Appeals Council's conclusion that the evidence which Claimant submitted did not provide a basis for changing the ALJ's decision is obviously correct and supported by substantial evidence. Having thoroughly examined all of the evidence of record including the evidence which Claimant submitted while his case was pending before the Appeals Council, the Court finds that Dr. Day's December, 2003, deposition testimony is nothing more than a reiteration of his findings and opinions about Claimant's physical and mental condition, limitations and disability based upon his clinical findings and Claimant's subjective reports. The Court further finds as stated above that Dr. Penders' January, 2004, report basically validates Dr. Day's diagnosis of depression. The record does not contain the results of psychological testing or documents indicating that Claimant has been treated in any way for his depression than through medications. The Court finds that the evidence submitted while Plaintiff's case was pending before the Appeals Council was therefore duplicative and cumulative and would not have changed the ALJ's decision. The evidence was not therefore new and material. The Court further finds that the evidence before the ALJ was sufficient for him to render decision at all steps in the sequential analysis. Accordingly, the Court finds that Claimant's assertion that the Commissioner's decision must be remanded due to the failure of the Appeals Council to explain how it viewed must fail.

The Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the

Pleadings is **DENIED**, Defendant's Motion for Judgment on the Pleadings is **GRANTED**, and this matter is **DISMISSED** from the docket of this Court.

      The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

      ENTER: September 22, 2005.

R. Clarke VanDervort
United States Magistrate Judge

25